**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTIN M. HICKOX,** | : | |
| | : | |
| Plaintiff, | : | Civil No. 4:10-CV-1931 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **CENTRE DAILY TIMES,** | : | |
| **ROBERT HEISSE, and** | : | (Magistrate Judge Carlson) |
| **and SARAH GANIM,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I. **INTRODUCTION**

In this action, Plaintiff Justin M. Hickox has sued the Centre Daily Times, a newspaper headquartered in State College, Pennsylvania, along with its editor and a reporter, whom he claims harassed him during court proceedings, and whom he claims published false and defamatory articles about him during the summer in 2010, a time when Plaintiff appears to have been involved as a defendant in certain preliminary criminal proceedings in the Centre County Court of Common Pleas. Although he was formerly employed as a correctional officer at the Centre County Prison, and was a long-time resident of Bellefonte, Pennsylvania, Plaintiff brought this action in federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C.

§ 1332.¹ (Doc. 1, ¶ 5.) In support of this jurisdictional averment, Plaintiff claims that he is a legal resident of Washington state.

After waiving service, Defendants filed a motion to dismiss this action pursuant to Rule 12(b)(1), asserting that Plaintiff is a domiciliary of Pennsylvania, and, therefore, there is no diversity of citizenship between the parties. (Doc. 25.) Defendant filed an answer to this motion on January 26, 2011 (Doc. 28), the day before Defendants filed a brief in support of their motion (Doc. 30). Plaintiff subsequently filed a brief in opposition to the motion (Doc. 31), to which Defendants replied on March 4, 2011 (Doc. 31).

We have reviewed Plaintiff's averments offered in support of his claims to have changed his domicile to Washington state, and Defendants' countervailing assertions that Plaintiff remains a domiciliary of Pennsylvania. Upon consideration, we find that although Plaintiff has come forward with unsupported allegations in support of his position that he changed his domicile from Pennsylvania to Washington state in 2010, he has failed to carry his burden of persuasion by a preponderance of the evidence that he is a domiciliary of Washington state. Instead, upon consideration

---

¹ Plaintiff subsequently filed an amendment to the complaint in which he increased his damages claim from $125,000 to $250,000, and claims that Defendant Sarah Ganim made additional defamatory comments and published defamatory articles about him in the Centre Daily Times after this litigation commenced. (Doc. 13.)

of the competing documents and arguments submitted by the parties, we find that Plaintiff has failed to rebut the legal presumption that he continued to be a Pennsylvania citizen after traveling to Washington in 2010, and that he has furthermore failed to prove by a preponderance of the evidence that he changed his domicile to Washington. Accordingly, we find that Plaintiff remained a Pennsylvania domiciliary at the time he commenced this lawsuit, and thus there is no diversity of citizenship among the parties that would permit the Court to exercise subject matter jurisdiction over this action. Accordingly, we will recommend that this action be dismissed without prejudice to Plaintiff continuing to pursue his claims in Pennsylvania state court where he has filed a subsequent, separate and substantively identical lawsuit in which he asserted that he was a resident of Pennsylvania.[2]

## II.   BACKGROUND

The factual background relevant to the motion before the Court is almost entirely undisputed. Plaintiff Justin Hickox was a former prison guard at the Centre County Prison, and who appears to have resided for part of his adult life in

---

[2] Less than one month after commencing this action in federal court, Plaintiff brought an action in state court that is substantively identical to this action, with the notable exception of Plaintiff's representation in that state court complaint that he is, in fact, a resident of Pennsylvania. As will be discussed, we find this representation to substantially undermine Plaintiff's inconsistent claim in this Court that he is a domiciliary of Washington state.

Bellefonte, Pennsylvania.  In addition to serving as a prison guard in Centre County, Plaintiff maintained a residence in Bellefonte, had a valid Pennsylvania driver's license, and was registered as a notary public with a Pennsylvania address.[3]  Defendants have submitted documents which reflect that Plaintiff had been charged with certain criminal offenses in Pennsylvania for passing bad checks and also for selling a firearm in violation of state law, and these criminal charges also indicate that Plaintiff was a Pennsylvania resident.

On March 31, 2010, while on probation for criminal offenses in Pennsylvania, Plaintiff apparently obtained permission to "travel" to Washington state in order to "visit" his uncle in Buckley, Washington.  (Doc. 17, Ex. C.)  Although this travel document reflects that Plaintiff's home address was Bellefonte, Pennsylvania, the travel permission form indicates that the purpose the trip was that Plaintiff was "moving to WA." (Id.)  The travel permission form instructed Plaintiff that he was to follow all conditions of his probation, notify his probation officer "immediately upon returning home," and to call his probation officer as directed.  (Id.)

Plaintiff represents that after traveling to Washington, he obtained a Washington driver's license, surrendered his Pennsylvania driver's license, obtained

---

[3] Plaintiff claims that he surrendered his Pennsylvania driver's license and obtained a new driver's license in Washington state.

a lease for a residence, and registered to vote in Washington.[4] In June 2010, shortly after arriving in Washington, however, Plaintiff was extradited to Pennsylvania in order to face charge of child molestation involving a nine year-old boy, whom Plaintiff was charged with abusing "numerous times over several months in 2008."[5] (Doc. 36, Ex. A.) On March 2, 2011, Plaintiff entered an open plea to four counts of felony indecent assault involving his abuse of this child. (Id.) Plaintiff is scheduled to be sentenced for these crimes on May 27, 2011. (Id.)

Following his return to Pennsylvania to face charges of indecent assault of a minor, Plaintiff commenced this litigation by filing a complaint on September 15, 2010. (Doc. 1.) In the complaint, Plaintiff avers that the Court has subject matter jurisdiction over the controversy on the basis of diversity of citizenship between the parties, claiming that he is a resident of Washington state, and that the Defendants are

---

[4] Plaintiff represents that because he is incarcerated, he is unable to obtain documents to verify these representations. For purposes of this report, we have considered Plaintiff's unsubstantiated representations regarding these actions he claims to have taken after arriving in Washington in April 2010, but we find that he has failed to sustain his burden of producing evidence in support of his claim that he changed his domicile. However, even if we were to credit Plaintiff's averments regarding these actions, we would find them to be insufficient to sustain Plaintiff's burden of persuasion that he changed his domicile to Washington state.

[5] Given the nature of the Pennsylvania charges that brought Hickox back to this state, it bears mentioning that upon arriving in Washington, Plaintiff claims to have "gained employment at Durham School Services driving a school bus." (Doc. 31, p.2.)

Pennsylvania citizens. The complaint alleges state-law causes of action, including allegations that Defendant Ganim harassed Plaintiff during court proceedings, and printed defamatory articles about Plaintiff in the Centre Daily Times. (Id.)

Less than one month later, on October 12, 2010, Plaintiff filed a complaint in the Clinton County Court of Common Pleas, which was subsequently transferred to the Centre County Court of Common Pleas, in which he makes substantially verbatim allegations – with the notable exception of Plaintiff's representation that he "is an adult resident of the Commonwealth Of Pennsylvania, County of Clinton, with an address of Po Box 419, McElhattan PA 17745." (Doc. 25, Ex. 1.). Plaintiff then amended his complaint in his federal action in this Court on October 25, 2010, adding allegations regarding Defendant Ganim, and claiming additional damages. (Doc. 13.)

After waiving service, on January 14, 2011, Defendants filed a motion to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that contrary to his allegations, Plaintiff is a citizen of Pennsylvania, and, therefore, there is no diversity of citizenship between the parties. (Doc. 25.) Defendants filed a brief in support of their motion on January 18, 2011. (Doc. 30.) Plaintiff has filed two separate responses to this motion. (Docs. 28, 31.) On March 4, 2011, Defendants filed a reply brief in further support of their motion, together with exhibits. The motion is now fully briefed and is ripe for adjudication. For the

reasons that follow, we will recommend that the motion be granted and the complaint dismissed without prejudice to Plaintiff continuing to pursue his state-law claims in the Pennsylvania Court of Common Pleas, in the separate action filed by Hickox in state court, an action in which he claimed a Pennsylvania residence.

### III.  DISCUSSION

#### A.  Legal Standards Governing Challenges to Subject Matter Jurisdiction on the Basis of Diversity.

Federal courts are vested with original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000 and is between "citizens of different states." 28 U.S.C. § 1332(a)(1); see also McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006); cf. Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (noting that diversity jurisdiction "requires that, in cases within multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."). The party asserting diversity jurisdiction, in this case the Plaintiff Justin Hickox, bears the burden of proving by a preponderance of the evidence that the parties are, in fact, diverse. McCann, 458 F.3d at 286, 287. In determining whether diversity jurisdiction exists, a court is not obligated to rely solely upon the facts alleged in the complaint, or to take all well-pleaded facts as true. Id.; see also Berardi v. Swanson Memorial Lodge No. 48 of

Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (in assessing a motion under Rule 12(b)(1), the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings).

> **B. The Burden of Proving a Change in Domicile Rests With the Party Asserting that Diversity of Citizenship Between the Parties Exists.**

In considering whether diversity of citizenship exists between the parties, we note that for jurisdictional purposes, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" McCann, 458 F.3d at 286 (quoting Vlandis v. Kline, 412 U.S. 441, 454 (1973)). In order to determine a person's domicile courts may consider several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." Krasnov v. Dinan, 465 F.2d 1298, 1301 (3d Cir. 1972). Other factors that may be considered include location of bank accounts, location of spouse or family, membership in unions or other organizations, and driver's license and vehicle registration. McCann, 458 F.3d at 286 (citing 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005)).

Although an individual can change domicile "instantly," McCann, 458 F.3d at 286, in order to do so "[h]e must take up residence at the new domicile, and he must intend to remain there." Krasnov, 465 F.2d at 1300. However, one principle concerning changes to a party's domicile that sometimes arises has particular application to this case: "[a] domicile once acquired is presumed to continue until it is shown to have been changed." McCann, 458 F.3d at 286 (quoting Mitchell v. United States, 88 U.S. 350, 353 (1874)). As a result, "[t]his principle gives rise to a presumption favoring an established domicile over a new one." Id. at 286-87 (citations omitted).

Because of this presumption, in cases such as this where the party claiming a new domicile is also the proponent of federal jurisdiction, that party bears: (1) the burden of producing evidence to rebut the presumption in favor of an established domicile, and (2) the burden of proving by a preponderance of the evidence that a change of domicile actually occurred. Id. at 288-89. In order to evaluate its jurisdiction, a court need not conduct an evidentiary hearing, "so long as the court has afforded [the parties] notice and a fair opportunity to be heard." Id. at 290 (citations omitted). Notably, "[a] key consideration in determining whether a hearing is required is whether either party requested one." Id. In this case, neither party has

asked the Court to convene an evidentiary hearing on the pending motion, and we find such a hearing to be unnecessary for purposes of issuing this report.[6]

> C. **Plaintiff Has Failed to Produce Evidence to Rebut the Presumption That He Remains a Citizen of Pennsylvania, and He Has Further Failed to Carry His Burden of Proving By a Preponderance of the Evidence That He Changed His Domicile from Pennsylvania to Washington State in 2010.**

Guided by the foregoing considerations, we find that Hickox was initially a citizen of Pennsylvania for years prior to April, 2010. Further, although Plaintiff has come forward with a number of assertions that he claims support his claim that he changed his domicile to Washington state, he has nevertheless failed to rebut the presumption that he remained a Pennsylvania citizen, and he has failed to carry his burden of demonstrating by a preponderance of the evidence that he did, in fact, change his domicile.

As an initial matter, there appears to be no dispute that until at least April 2010, Plaintiff remained a resident of Pennsylvania, residing in Bellefonte. There is also

---

[6] In addition, Plaintiff has written to the Court asking that the motion be ruled upon without delay, recognizing that if the motion is granted "the complaint will have to be re-filed in Centre County." (Doc. 33.) We are unclear as to why such a complaint would need to be re-filed in the Court of Common Pleas, as it appears that Plaintiff has already initiated a lawsuit in the Centre County Court of Common Pleas that is substantively identical to the complaint filed in this case, with the exception of Plaintiff's representation in that case that he is a Pennsylvania resident.

no dispute that until that time, Plaintiff maintained a Pennsylvania driver's license, was employed in Pennsylvania, and was – and remains – registered as a notary public in Pennsylvania. At the time Plaintiff left the Commonwealth to travel to Washington state some time in or around April 2010, he was on probation, and had to obtain permission to travel out of the Commonwealth. In the travel permission form that Plaintiff obtained on March 31, 2010, he provided a Pennsylvania home address, and was directed, *inter alia*, to notify his probation officer "immediately upon returning home." (Doc. 17, Ex. C.) Little more than two weeks after he was provided with this travel document, Pennsylvania officials charged Plaintiff with felony indecent assault relating to the molestation of a 9 year-old child in Pennsylvania during 2008 – charges that resulted in Plaintiff being extradited from Washington to Pennsylvania just months after he left the Commonwealth. In addition to these very serious charges, Plaintiff and Defendants have submitted documents which show that Plaintiff was also charged in March 2010 with lesser offenses involving receipt of stolen property and issuing bad checks. Notably, these criminal charges all indicate that Plaintiff was a Pennsylvania resident, and there is nothing to indicate that Plaintiff notified his probation officer that he had moved permanently to Washington when he traveled there after obtaining permission to do so.

Notwithstanding the foregoing, Plaintiff maintains that, when he traveled to Washington state, he intended to become a citizen of that state, and to remain there permanently. Plaintiff makes this assertion, after living for years in Pennsylvania, on the basis of approximately 2 months' travel to Washington in the weeks immediately preceding his arrest and extradition to Pennsylvania to face indecent assault charges. Plaintiff offers no evidence to support this contention that he was domiciled in Washington, but instead makes a number of assertions in an effort to both rebut the presumption that he remained a Pennsylvania domiciliary, and to prove by a preponderance of the evidence that he changed his domicile to Washington state. Included among these unsupported assertions are Plaintiff's representations that an uncle gave Plaintiff permission to live with him in Buckley, Washington; that Plaintiff surrendered his Pennsylvania driver's license and obtained a Washington driver's License; and that Plaintiff "gained employment at Durham School Services driving a school bus." (Doc. 31, at 2.)[7] In addition, Plaintiff represents that he owns

---

[7] Although Plaintiff has been unable to submit evidence that supports his claim that he changed his domicile, we acknowledge his efforts to provide factual detail to demonstrate the veracity of his assertions. Thus, Plaintiff represents that his Washington driver's license number is HICKOJM132MN with an expiration of July 14, 2014. (Doc. 28, ¶ 19.) He has also provided the street address at the location he claims to have a lease, and the name and address of the business he claims to own in Tacoma, Washington. (Id. ¶¶ 19-21.)

a business in Washington called "Pierce County Notary" located in Tacoma. (Doc. 28, ¶ 21.)

Upon consideration of the parties competing assertions regarding Plaintiff's state of citizenship, we must conclude as a threshold matter that Plaintiff has failed to sustain his initial burden to produce evidence to rebut the presumption that he remained a Pennsylvania domiciliary. As we noted above, the Third Circuit has instructed that when a party claims to have changed the state in which he is domiciled, he bears the burden of producing evidence to rebut the presumption. <u>McCann</u>, 458 F.3d at 288. It is only after the party produces <u>evidence</u> in support of his claim regarding a change of domicile that the presumption in favor of his original domicile is rebutted. <u>Id.</u>

However, even if Plaintiff had supported his factual assertions with evidence, we would still not find that he had carried his burden of proving by a preponderance of the evidence that he had become a Washington citizen. In addition to the many indications in the record that strongly suggest Plaintiff's continued ties to the Commonwealth, after filing this action in federal court Plaintiff represented in other court documents that he is a Pennsylvania resident. Thus, in a civil action filed in the Court of Common Pleas less than one month after he initiated this lawsuit, Plaintiff represented that he is "an adult resident of the Commonwealth of Pennsylvania,

County of Clinton, with an address of PO Box 419, McElhattan, PA 17445." Although he now inexplicably claims that he filed this complaint "by mistake" (Doc. 28, ¶ 11), we find that this representation is not credible. Plaintiff also represented that he would be withdrawing this state-court action in February 2011, but Defendants have represented that as of March 4, 2011, Plaintiff had not done so.

When we consider this representation made in a state-court pleading regarding his continued residence in Pennsylvania, together with the lack of evidence to rebut the presumption that Plaintiff remained a Pennsylvania citizen, we must find that Plaintiff has failed to carry his burden of demonstrating that diversity exists in this case. Plaintiff has neither rebutted the presumption of his continued citizenship in Pennsylvania, nor proved by a preponderance of the evidence that his domicile is now Washington state. On the basis of this finding, we conclude that Plaintiff remains a citizen of Pennsylvania, and this case should, therefore, be dismissed for lack of subject matter jurisdiction. We will, therefore, recommend that this action be dismissed without prejudice to Plaintiff's right to continue to prosecute his claims in the Centre County Court of Common Pleas, where he has commenced a substantively identical lawsuit.[8]

---

[8] Plaintiff concedes "that the complaints filed in Clinton County [subsequently transferred to Centre County] and the US District Court were in fact, the same." (Doc. 28, ¶ 13.) Although Plaintiff offers his interpretation that

## IV. **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT Defendants' motion to dismiss (Doc. 25) be GRANTED without prejudice to Plaintiff pursuing his claims in the Pennsylvania Court of Common Pleas.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of

---

Defendants filed their motion "to avoid having to be punished for their actions and avoid paying for the damages they have caused the Plaintiff by printing false articles about him in their newspaper[,]" we note that Plaintiff has sued these defendants in state court on allegations identical to those made in this case, and we no reason to suspect that Defendants will not respond and defend themselves against his allegations in that properly filed case. Defendants' motion before this Court properly raised a substantial question regarding this Court's jurisdiction to preside over this action, and we have found that Defendants' motion was well-founded.

15

that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of March, 2011.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
